---

### SPERO v. SCHULTZ.

(Supreme Court, Appellate Division, First Department. February 19, 1897.)

VENDOR AND PURCHASER—SPECIFIC PERFORMANCE.
    Specific performance of a contract to purchase a "house and lot" will not be
    ordered where the house has but three walls, the beams being inserted on the
    fourth side in a wall on the lot of an adjoining owner, though the vendor has a
    prescriptive right to the use of the wall for that purpose. Ingraham and
    Williams, JJ., dissenting.

Appeal from special term, New York county.

Action by Louis Spero against Katherina Schultz, as executrix of the will of Joseph Schultz, deceased, for the specific performance of a contract for the exchange of property. From a judgment dismissing the complaint, entered on a decision of the trial judge, plaintiff appeals. Affirmed.

The action was brought for the specific performance of a contract for the exchange of real property, and to recover damages if specific performance could not be had, the defendant's counterclaim asking like affirmative relief. It is admitted that the parties were ready to carry out the contract, but the court below sustained the objection made by the defendant that the building agreed to be conveyed to him has no wall on its westerly side, and is exclusively supported by beams and girders inserted in the wall of the building on the premises next adjoining on the west, and is dependent entirely on that wall for support. The plaintiff agreed to convey to the defendant "the houses and lot being and known as 'No. 530 East Twelfth Street,' in the city of New York, the size of lot being 25 feet in width front and rear, by 100 feet in depth."

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Jacob Marks, for appellant.
John Fennel, for respondent.

O'BRIEN, J. The evidence supports the finding that the plaintiff's building has no wall on its westerly side, and that its beams are inserted in the easterly wall of the building on the adjoining lot on the west, and is dependent upon that wall for support. On the premises are two houses, one in front and one in the rear, the latter of which is not involved, the question on this appeal turning upon whether the title to the front house is marketable. It must be assumed that in contracting for the purchase of a house the defendant had a right to demand a house with four walls; the ordinary and generally accepted meaning of the term "house" necessarily including a structure with four walls. Upon the 25 feet contracted to be conveyed there is a house with but three walls; the fourth, as found, being entirely upon the lot to the west, into which the beams of plaintiff's house are inserted, and upon which they depend for support. No record title to this wall, or agreement in writing or by parol for its use, was produced; the plaintiff basing his claim to the wall as a party wall upon adverse possession. It appears that for 30 years the buildings and walls have stood in the same condition; and that during that time the plaintiff and his grantors have used the westerly wall,—its entire width of eight inches and its entire height above the fourth story and up to the roof; which wall is built entirely on the premises on the west. Mrs. Boehmer, the owner of this westerly lot, testified that she acquired title to the property from her husband, to whom she had been married in 1867, and that he remained the owner until 1884, when he died, and gave and devised the premises to her; that she has since remained the owner, and that Nos. 528 and 530 have been in the same condition during the period of 29 years that she has lived on the premises. Another witness, who had known the premises for 30 years, said that they have al-

ways been just as they are now, and that no change in the walls
or any of the stories had been made during that time. It further
appears that the plaintiff and Mrs. Boehmer had a conversation
about the wall, in which the latter stated that she made no ob-
jection to the beams in her wall, but told the plaintiff that the
wall was hers. This conversation occurred in the fall of 1895;
and the plaintiff insists that, as it was long subsequent to the time
when his title ripened into right, this in no way affected or im-
paired the title by prescription and adverse possession which be-
fore that time had been gained. The absence of any record title
of the plaintiff's claim to the use and support of the wall in ques-
tion as now used by him necessarily calls for, and makes such
user dependent upon, proof outside of the record of the special cir-
cumstances which entitle him to such user. The plaintiff insists
that by the mere use of the wall for the beams of his house dur-
ing the statutory period his claim has ripened into a title by ad-
verse possession, and that the wall must now be regarded as a
party wall. "A party wall in the ordinary meaning of the term is
a wall between two adjoining owners built at common expense
and used for common advantage. The term, however, may be used
in four different senses: * * * Third. A wall which belongs
entirely to one of the adjoining owners, but is subject to an ease-
ment or right in the other to have it maintained as a dividing wall
between the two tenements." 18 Am. & Eng. Enc. Law, p. 3.
The expression "subject to an easement or right" necessarily means,
as shown in the succeeding portions of the work referred to, sub-
ject to one created by contract, express or implied, by prescrip-
tion or by statute. Where a wall is constructed entirely upon one's
own land, and subsequently the owner of adjoining land inserts
his beams in such wall, does an inference from that fact alone
flow that it is intended as a claim adverse to the original owner
of the wall? Is not the inference equally strong that it has been
done by permission or acquiescence? And does the rule of law go
so far as to require the owner of the land to assert exclusive own-
ership in the wall during the statutory period in order to prevent
the rights of the beam owner from ripening into title to the wall
by adverse possession? Undoubtedly, if it had been shown that
the houses were originally owned by one person, and had been built
together, then, upon the authorities referred to by Mr. Justice IN-
GRAHAM, the presumption that the wall was a party wall would
arise. Where, however, it does not appear but that they had dif-
ferent owners, and were built at different times, the mere fact that
a person has inserted the beams of his house in his neighbor's
wall, unless it is shown to have been done by permission, or under
an agreement, or has been acquiesced in in such a way as to give
a prescriptive right, does not thereby make it a party wall.

Upon the question of the time the wall has been used, the evi-
dence is satisfactory. But the additional evidence of the absence
of circumstances or conditions which may have prevented the use
of the wall from ripening into title is wanting. For all that ap-
pears, there may or may not have been parties in being against

whom the statute of limitations could have run, but we do not understand that, in the absence of proof, a presumption will arise or be indulged in that such was or was not the fact, or that an agreement had ever been made between the owners of the buildings in question permitting the use of the wall as claimed. We think the burden was upon the plaintiff to show such agreement, if any, and the precise circumstances under which he claims the title to such use of the wall. In Schriver v. Schriver, 86 N. Y. 585, it is said:

"In this class of cases are those where the title depends on presumption grounded merely on the lapse of time. It is said by a text writer that, as between vendor and purchaser, the court ought not to presume, unless it believes on circumstances strong enough to induce belief that the fact is actually so. * * * The title of the vendors rests upon a presumption raised by lapse of time. But in conflict with that presumption, facts, not suspicious only, appear, raising a rational doubt whether a vendee relying upon that title may not be called upon to defend and to produce proof to explain or obviate those facts."

And in Wilhelm v. Federgreen, 2 App. Div. 483, 38 N. Y. Supp. 8, where the objection made was to an encroachment of a building upon the adjoining lot, it was urged that, as the building had been erected more than 20 years, there had been adverse possession, which had ripened into title. The presiding justice, in passing upon the question, said:

"It is undoubtedly true, as claimed upon the part of the defendant, that whenever possession of sufficient duration is proved, the title of the possessor is as good as if conveyed by a deed. * * * But the question of the nature of the adverse possession and the sufficiency of its duration are always questions which are open for investigation and consideration; and the purchaser will not be compelled to take title where there are circumstances which may have prevented the possession from ripening into a title. * * * In the case at bar, in order that this adverse possession should have ripened into a title, it was necessary to show that such possession was intended to be adverse, and, further, that the parties in whom the title to the premises claimed to be held adversely was vested, were in such a condition that the statute of limitations ran, and the protection of the statute inured, to the benefit of the adverse possessor."

Here the only evidence of adverse possession is that the premises have always been as they now are upwards of 20 years; but no evidence was produced by the plaintiff to prove any of the other matters essential to establish the claim. Nor does it appear that the owners of No. 528 East Twelfth street were in such a condition that the statute could have run against them during the statutory period. These facts, in the absence of evidence, the court is asked to determine; and that notwithstanding the claim made by Mrs. Boehmer that she, and she only, is the owner of the wall in question. As she is not a party to the suit, the justice of such claim cannot be determined; and if she should undertake to assert it by proceeding to tear down the wall, the defendant, if compelled to take title, would be called upon to seek a judicial determination of the conflicting claims to the wall, and to establish the claim of adverse possession, thereby becoming involved in a litigation, the success of which would depend upon parol evidence,—a species of proof which, as said in Jay v. Wilson, 91 Hun, 391, 36 N. Y. Supp. 186, time, death, or some other casualty

may place beyond his reach, and which in this case he has not been placed in possession of.

The principle of caveat emptor, invoked by the plaintiff, we do not consider applicable. There is nothing to show that the defendant, at the time of making the contract, knew, or could have known, that the front building was dependent upon a wall which, as the result of a survey, was shown to be entirely upon the adjoining premises. Besides, we think the nature of the contract renders that principle inapplicable.

Our conclusion, therefore, is that the plaintiff's right in the wall by adverse possession was not fully established; the title tendered was not marketable; and that the judgment below was right, and should be affirmed, with costs.

VAN BRUNT, P. J. I concur in the affirmance of this judgment. When a party buys a lot with a building thereon, he is entitled to have the whole of the building upon the lot, and not a material portion of it situated upon an adjoining lot, even though the right to keep it there may exist.

PATTERSON and O'BRIEN, JJ., concur.

INGRAHAM, J. (dissenting). The action was brought for a specific performance by the plaintiff of a contract to convey to the defendant a piece of property known as number 530 East Twelfth street, in the city of New York. By the contract the plaintiff agreed "to sell, grant, and convey unto the said party of the second part the house and lot being and known as 'No. 530 East Twelfth Street,' in the city of New York, the size of lot being 25 feet in width, front and rear, by 100 feet in depth, be said dimensions more or less." Five hundred dollars was paid to the plaintiff upon the signing of the contract. At the time fixed for the delivery of the deed the plaintiff tendered a deed to the defendant, which the defendant refused to accept, his reason being "simply that the house is not as represented." The plaintiff then demanded payment of the balance of the consideration money ($700), the ground assigned by the counsel for the defendant's testator at the time being, "We won't accept title to your house;" that "the house didn't seem to be in condition the way he agreed about the wall on the westerly side. He said it was a beam right. He said that our house had our beams into the other man's wall, which was a beam right, and he didn't want it." It was not disputed but that the plaintiff had a good title to a lot of land known as "No. 530 East Twelfth Street," 25 feet in width, front and rear, by 100 feet in depth; but the objection made to the title by the defendant's testator was that the westerly wall of the house,—the wall between numbers 528 and 530,—and upon which the beams of both houses rested, was not upon the property of the plaintiff, and for that reason the plaintiff could not give to the defendant a good title to the house as it existed, the plaintiff having no title to the wall of the house to the west. It is conceded by the plaintiff that the westerly wall of the

house sold by him is entirely upon the lot adjoining on the west. Such wall is not upon the plaintiff's property; nor does the conveyance to him in terms convey the title to the property upon which this wall adjoining on the west stands. It was proved, however, that these two houses had been erected about 30 years, and that during that time they had been in substantially the same condition as they were at the time of the execution of the contract and tender of the deed. It was shown that during all that time this wall had been, in effect, used as a wall to both premises. It supported the beams of both houses, the westerly wall of the plaintiff's house and the wall adjoining on the west. We think it clear that if one person had been the owner of both lots, Nos. 528 and 530, and had built these buildings as they existed at the time of the signing of this contract, and then had sold the buildings to different persons without mentioning the existence of this common wall, a party-wall agreement would have been implied, so that this common wall in use by both buildings would have been a party wall; and we think it also clear that from the uninterrupted use of this wall by the owners of both houses and lots for a period of 20 years, where neither of the owners was under any disability, and where neither owner recognized the right of the other to the exclusive ownership of the wall, there would arise an implication of a contract or grant by which this wall would become a party wall. One of the definitions of a party wall is a wall which belongs entirely to one of the adjoining owners, but is subject to an easement or right in the other to have it maintained as a dividing wall between the two tenements. See 18 Am. & Eng. Enc. Law, p. 3.

In the case of Rogers v. Sinsheimer, 50 N. Y. 646, Sinsheimer, the owner of two adjoining lots, built thereon two houses separated by a party wall, and conveyed the easterly lot to the plaintiff's grantor and the westerly lot to the defendant's grantor, the entire wall separating the two houses being upon the easterly lot. The deed made no reference to the party wall. The court held that the wall was a party wall, and that the premises upon which the wall was built were charged with a servitude of having the wall stand as an exterior wall to the defendant's house, and as a support to its beams, so long, at least, as the buildings should endure; and that this servitude was both continuous and apparent, being one which would be discovered on an inspection of the premises by one reasonably familiar with the subject; and that, on the severance of the two houses, the grantee of the westerly lot acquired an easement corresponding with the servitude to which the easterly lot was subject. The court having held that an implied grant arose because of the severance of the two buildings, although no mention was made of a party wall in the conveyances, and although a space of two inches existed between the wall and the commencement of the lot which was the dominant tenement, it is clear that the same principle would apply where there had been open and notorious possession of the premises for a period of 20 years, and in which case the existence of a grant would be implied, neither of the owners of the adjacent premises being under

any disability. See 18 Am. & Eng. Enc. Law, p. 8, where it is said: "The continuous use of a wall, by adjoining owners, as a party wall, for the prescriptive period, raises the presumption of a contract between the parties." See, also, Schile v. Brokhahus, 80 N. Y. 614, and Eno v. Del Vecchio, 4 Duer, 53. The contract provided that the plaintiff should convey to the defendant's testator the fee of a lot 25 feet in width, front and rear, by 100 feet in depth. It is conceded that the plaintiff has a good title to such a lot of land. The contract, however, also provided for the conveyance of the building as it existed upon the lot, which would include the right to have a building with four walls, and which, so long as that building existed, would continue to have four walls. There is no dispute but that the building has at present four walls; and if it appears by uncontradicted testimony, and beyond a reasonable doubt, that the plaintiff has the right to use the building as it exists, with the four walls as they now exist, as long as he wishes to use them, why then it is apparent that the plaintiff had a good title to the premises that he agreed to convey, and that the defendant was bound to accept the deed tendered. We have seen that this wall between the premises was a party wall as it existed, and that a grant of a party-wall right, or a contract creating a wall a party wall, will be implied, although the wall is totally upon the adjoining property, by the continuous use by the adjoining owners for a prescriptive period.

The remaining question is whether, upon the facts of this case, the evidence of such continuous use of the wall as a party wall was so conclusive as to require the court to compel the parties to specifically perform their contract. We have lately examined the question of the nature of the evidence to justify the court, in an action for specific performance, in compelling a purchaser to take title where the title is founded upon adverse possession, and we there held that a continuous possession for 32 years was not sufficient, but that the vendor was bound to show in addition that the person in whom the legal title was vested was not under such a disability as would prevent the title from vesting by adverse possession. In this case we think, however, that such evidence exists. The question is whether or not there was such continuous use of this wall as a party wall for such a length of time as would justify the implication of a grant. The evidence is that the property adjoining the plaintiff's property is now owned by one Magdalena Boehmer, who was called as a witness. She testified that in 1867 she married one Clemens Boehmer, who was the grantee of the deed conveying the premises No. 528 East Twelfth street, which deed was dated and recorded March 22, 1867. The witness testified that she was married in 1867 to the grantee of the deed; that her husband remained such owner until 1884, when he died; that he gave the property to his wife by his last will and testament; and since his death the witness has lived on the premises, and has occupied them continuously; and that the walls of the building had remained in the same condition that they are at the present time from the time of her marriage to the defendant in 1867 to the time

of the trial. We have here express evidence of the owner of the adjacent property that such owners were of full age, and under no disability, for a period of 29 years, during which there was a continuous use of this wall by the adjoining owners as a party wall. Under such circumstances it seems to us clear that there was an implication of a grant or contract creating this wall a party wall; at any rate, as long as the building upon the lot of the plaintiff existed.

The judgment must therefore be reversed, and judgment directed for the plaintiff, with costs.

WILLIAMS, J., concurs.