GEORGE SCHAEFER, Respondent, *v.* ABRAHAM L. BLUMENTHAL, Appellant.

VENDOR AND PURCHASER — MARKETABLE TITLE — PARTY WALL ON ADJOINING LOT. A purchaser is not justified in refusing to carry out his contract for the purchase of a lot described by metes and bounds, together with the house thereon, because the party-wall on one side is, for a portion of its length, wholly on the adjoining lot, where it appears that the contract was made after his personal inspection of the premises, and the condition of affairs, if not known to him, was his own fault; that the party wall was not maintained under a perpetual covenant running with the land, but was to last only so long as the building and the wall should endure, and that owing to the fact that both lots were formerly owned by the same person who had erected houses thereon and had created thereby a servitude imposed upon the adjoining lot, the purchaser had a clear and indisputable right to rest the beams of his house in the wall during its existence.

*Schaefer* v. *Blumenthal,* 51 App. Div. 517, reversed.

(Argued November 21, 1901; decided December 20, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 29, 1900, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

This action was brought to recover damages for the alleged breach of a contract whereby the defendant agreed to sell to the plaintiff a lot of land in the city of New York, with the buildings thereon, for the sum of $28,250.00, and upon receiving the price mentioned to execute and deliver to the plaintiff a full covenant warranty deed for the conveyance of the fee of said premises free and clear of all incumbrances,

except a mortgage in the sum of $20,000. The facts established upon the trial rest upon the admissions of the parties.

The premises referred to in the contract of sale form a part of a plot of land consisting of four lots on the northeast corner of Lenox avenue and 133rd street, in the city of New York, these lots extending northerly on the east side of the avenue. Some years prior to the execution of the contract in question, and in the year 1889, the owners of these lots erected three apartment houses adjacent to each other and fronting on Lenox avenue, one of the said houses being at the northeast corner of 133rd street and Lenox avenue and the other two immediately to the north thereof.

For the purpose of conveniently designating the said houses in this case, the one at the northeast corner of Lenox avenue and 133rd street is referred to as house No. 1, the house immediately adjacent thereto to the north as house No. 2, and the third house immediately adjacent to house No. 2 as house No. 3. The construction of the three houses was commenced and completed at the same time.

House No. 2, together with the lot on which it stands, is the property described in the contract of sale and the one in dispute. Houses numbers 1 and 2 are separated and supported by a wall which stands partly on the lot south of lot No. 2 and partly upon No. 2; numbers 2 and 3 are separated and supported by a wall standing partly on No. 2 and partly on No. 3. These walls have stood upon the lots from the time that the buildings were completed in 1889 by the common owners of the land.

After the completion of the buildings, house No. 3 was sold June 30th, 1890, by the common owners of the three lots to one Kramsall and wife by the following description : " Beginning at a point on the easterly side of Lenox avenue, distant fifty-two feet, eleven inches, northerly from the northeast corner of Lenox avenue and One Hundred and Thirty-third street ; and running thence easterly parallel with One Hundred and Thirty-third street, and part of the way through the center of a party wall, eighty-four feet ; thence northerly and parallel

with Lenox avenue, twenty-seven feet; thence westerly and again parallel with One Hundred and Thirty-third street, and part of the way through the center of a party wall, eighty-four feet, to the easterly side of Lenox avenue; and thence southerly along the easterly side of Lenox avenue, twenty-seven feet, to the point or place of beginning and being known as No. 468 Lenox avenue."

House No. 1 was sold on April 21st, 1890, by the common owners to Elizabeth Seiler, the deed containing the following description: "Beginning at the northeast corner of Lenox avenue and One Hundred and Thirty third street; running thence east along the northerly side of One Hundred and Thirty third street, eighty-four feet; thence north and parallel with Lenox avenue, twenty-five feet, eleven inches; thence west and parallel with One Hundred and Thirty-third street, *and through the center of a party wall,* eighty-four feet, to the east side of Lenox avenue; and thence south along the same, twenty-five feet, eleven inches, to the point of beginning."

Prior to the execution of the contract in question the plaintiff examined the building described in the contract (house No. 2) and the air shaft therein. The wall in dispute, and hereinafter referred to, formed the southerly side of the air shaft.

On the 22d day of October, 1890, the common owners of these lots conveyed house No. 2 to one Ferdinand Ehrlich by the following description: "All that lot or parcel of land, with the buildings and improvements thereon, and all gas fixtures thereon belonging to the vendor, situate in the city of New York, and bounded and described as follows: Beginning at a point on the easterly side of Lenox avenue, twenty-five feet, eleven inches, north of One Hundred and Thirty-third street; thence running easterly, eighty-four feet, parallel with One Hundred and Thirty-third street; thence northerly parallel with Lenox avenue twenty-seven feet; thence westerly parallel with One Hundred and Thirty-third street, eighty-four feet; thence southerly twenty-seven feet parallel with Lenox avenue to the place of beginning."

, Some years after the conveyances referred to, and on the seventh of May, 1896, the defendant, as the grantee of Ferdinand Ehrlich, in the deed of house No. 2, containing last above description, entered into the contract for the sale of said premises with the plaintiff in this action under the same description as contained in the Ehrlich deed to him.

On the twentieth of May, 1896, at the time and place mentioned in the contract for the closing of the title, the defendant tendered to plaintiff a deed made by defendant and wife to plaintiff and wife under the following description : " Beginning at a point on the easterly side of Lenox avenue, distant twenty-five feet, eleven inches, northerly from the corner formed by the intersection of the northerly side of One Hundred and Thirty-third street and the easterly side of Lenox avenue ; running thence easterly and on a·line parallel with One Hundred and Thirty-third street, eighty-four feet ; thence northerly and on a line parallel with Lenox avenue, twenty-seven feet ; thence westerly on a line parallel with One Hundred and Thirty-third street, eighty-four feet, to the easterly side of Lenox avenue ; running thence southerly along the easterly side of Lenox avenue, twenty-seven feet, to the point or place of beginning. Both of the walls of the buildings erected on said premises being party walls, and all gas fixtures on said premises belonging to the said parties of the first part."

The trial court found that from the surveys of said premises it appeared that the southerly wall of the building erected upon the lot described in the contract, at a point about fifteen feet east from the front of Lenox avenue, turns south, and then for the distance of about twenty-seven feet six inches said southerly wall stands wholly upon the lot adjoining the south of the premises so contracted to be conveyed.

It ·further found that the plaintiff refused to accept said deed and complete said contract and pay the balance of the consideration named, upon the ground that the defendant was not able to convey said real estate by a good and marketable title, in fee simple, free from incumbrances except the mort- ·

gage specified; that the plaintiff's refusal to complete was also upon the ground that for a part of the distance the house erected upon said premises had no wall on the southerly side.

*Gibson Putzel* for appellant.   The failure of a vendor, in his contract of sale, to describe the walls of his building as party walls will not relieve the vendee from performance where the party wall rights are created by the act of the vendor or of his predecessors in the title and are limited to the particular party walls so standing.  (*Hendricks* v. *Stark*, 37 N. Y. 106; *Heartt* v. *Kruger*, 121 N. Y. 389; *Murly* v. *McDermott*, 8 Ad. & El. 138; *Sherred* v. *Cisco*, 4 Sandf. 480; McAdam on Landl. & Ten. [2d ed.] 532; *O'Neil* v. *Van Tassel*, 137 N. Y. 297; *Corn* v. *Bass*, 43 App. Div. 56.)   The plaintiff is not justified in rejecting the title because of the fact that a part of the southerly party wall stands wholly on the adjoining lot to the south.  (*Rogers* v. *Sins-heimer*, 50 N. Y. 646; *Spero* v. *Shultz*, 14 App. Div. 423; *G. A. R. E. T. G. Co.* v. *Myers*, 32 App. Div. 41.)

*Michael C. Gross* for respondent.   The description in the contract of the premises to be conveyed was by metes and bounds, definite and certain, and, therefore constituted a particular description, which controlled as the description to indicate the land intended to be conveyed.  (*Burnett* v. *Wadsworth*, 57 N. Y. 634.)   The land contracted to be conveyed could be located with certainty without describing its south line as running along the property of any particular party or being bounded on the south side by any particular monument.   There was nothing at all indefinite in the description, and, therefore, it did not constitute a case where there were any additions or false or mistaken particulars which might be rejected.  (*Robinson* v. *Kime*, 70 N. Y. 147.)   The grantee under the deed of the premises in question is without any title or claim to twenty-seven feet six inches of the wall over which the dispute arises.  (*Parsons* v. *Johnson*, 68 N. Y. 62; *Grant* v. *Chase*, 17 Mass. 446; *Tabor* v. *Bradley*, 18 N. Y. 109; *Ogden* v. *Jennings*, 62 N. Y. 532; *Sherred* v. *Cisco*, 4 Sandf.

480.} The right or easement of the premises in dispute in or to the adjoining lot would not confer upon the plaintiff the title to which his contract of purchase entitled him. (*Goddard on Easements*, 2; *Tabor* v. *Bradley*, 18 N. Y. 109; *Spero* v. *Shultz*, 14 App. Div. 423; 160 N. Y. 660.) Parties making contracts to purchase or sell property are presumed to have embodied in their agreement all the incumbrances, easements, covenants, conditions and restrictions affecting the property, and where some of them are stated it is presumed that all are stated. (*O'Neil* v. *Van Tassel*, 137 N. Y. 297; *Tabor* v. *Bradley*, 18 N. Y. 115.) The court cannot make the defendant's title marketable by passing upon objections, depending upon disputed questions of fact or doubtful questions of law in the absence of the party in whom the outstanding right is vested. (*Brokaw* v. *Duffy*, 165 N. Y. 391; *Vaught* v. *Williams*, 120 N. Y. 253; *D. M. L. & Imp. Co.* v. *Cook*, 159 N. Y. 15.)

BARTLETT, J. The single question is presented by this appeal, whether the plaintiff was justified in refusing to take title under his contract to purchase from the defendant the house and lot in question for the reason that a portion of the party wall on the southerly side thereof stood wholly upon the adjacent lot.

The position assumed by the plaintiff, in which he has been sustained by the courts below, is, that the defendant having agreed to convey to him a lot with the buildings thereon, described as twenty-seven feet wide and eighty-four feet deep, is in default of his contract, it appearing that a portion of the party wall on the south stands wholly upon the adjacent lot.

It is true that the contract to sell makes no reference to the party walls standing on either side of the building in question, and that the deed tendered conveys the premises by the exact description contained in the contract of sale, and refers to the party walls only at the close of the description of the property.

It appears that these party walls are not maintained under

perpetual covenants running with the land, but are to last only so long as the present buildings endure. It also appears that the plaintiff has a beam right in that portion of the party wall standing wholly on the adjacent lot on the south so long as the present buildings stand. The learned Appellate Division stated in this connection as follows: " The right or easement, however, does not answer to confer upon the plaintiff the title to which his contract of purchase entitled him. As he contracted to purchase a lot with a house upon it, he was entitled to receive a conveyance which gave to him a house with walls standing upon the lot conveyed. The contract made no mention of a party wall, and in no particular did it create any exception or limit in any respect the obligation to give perfect title to the lot, the house and its walls. This was the conclusion reached by this court in *Spero* v. *Shultz* (14 App. Div. 423), and such conclusion was affirmed in the Court of Appeals (160 N. Y. 660)."

We are of opinion that the position of the Appellate Division cannot be sustained. The fact that these houses were erected by a common owner and afterwards conveyed separately as described, has not been given due weight in the disposition of this case by the courts below. The plaintiff made this contract after a personal inspection of the premises in question, and the condition of affairs, if not known to him, is his own fault.

In *Hendricks* v. *Stark* (37 N. Y. 106) this court held that a right by an adjoining proprietor to use a party wall is not a legal incumbrance; a purchaser at public auction cannot refuse to complete his purchase on such ground. Judge PORTER, in writing for the court, said: " The practice of economizing space in populous cities, by the erection of buildings with party walls, is one so ancient that it would be difficult to trace its origin. The law applicable to this subject has been for centuries well settled in England, and the prevalence of a like usage in our larger towns has made the rules which govern it equally familiar here. There was nothing in the description of the premises in question as the ' Collins'

Hotel' which imported, *ex vi termini*, that the walls were of this or of a different character. The failure of the defendant to inform himself on a subject, as to which the notice of sale was silent, indicates his indifference as to the particular character of the walls and shows that he was content to buy without being at the trouble of examination or inquiry. This omission may be evidence of his own indiscretion and incaution, but it cannot be imputed as a wrong to the plaintiffs, who neither said nor did anything to mislead him. * * * It is true that the erection of a party wall creates a community of interest between neighboring proprietors, but there is no just sense in which the reciprocal easement for its preservation can be deemed a legal incumbrance upon the property. The benefit thus secured to each is not converted into a burden by the mere fact that it is mutual and not exclusive. (*Partridge* v. *Gilbert*, 15 N. Y. 601.)"

In the case from which we have quoted, the objection to taking the title was based upon the claim that a party wall was a legal incumbrance. In the case at bar this claim is not made, as the existence of the party wall is not protected by a perpetual covenant requiring its restoration in case the buildings were destroyed or removed. A party wall existing by virtue of a perpetual covenant running with the land is an incumbrance under the authorities. (*O'Neil* v. *Van Tassel*, 137 N. Y. 297.)

The claim made in the case at bar is that, notwithstanding the fact that the party wall on the south is to continue only during the existence of the present buildings and that plaintiff's beam right is secure during that period, nevertheless as he contracted to purchase a lot with a house upon it, he was entitled to receive a conveyance which gave to him a house with walls standing on the lot conveyed.

By the deed tendered to the plaintiff he received all of the land to which he was entitled under the contract of sale. The exact dimensions of the lot as contained in the contract are set forth in this conveyance. The fact that the party wall on the south for a distance of twenty-seven feet stood entirely

off the line of the lot purchased was no injury to the plaintiff, but rather a benefit, it being clear that his beam right was secure during the existence of the party wall in question. If this party wall ceased to exist by reason of its destruction or removal, the plaintiff would then be in undisputed possession of the lot which he purchased under the contract of sale. The plaintiff's right to rest the beams of his house in this party wall during its existence, springs from the fact that the common owner who erected the buildings on the three lots created thereby a servitude imposed upon the lot on the south of the premises in question. The northern boundary line of the lot on the south runs through the center of this party wall by the express terms of the deed from the common owners. This right is clear and indisputable, and the plaintiff is subjected to no risk of interference with the existing state of affairs during the continuance of the party wall. This position is fully sustained by *Rogers* v. *Sinsheimer* (50 N. Y. 646). Judge RAPALLO, writing for the court, said: " From the facts found and admitted, it appears that the two houses and lots, now owned by the parties to this action, respectively, were originally owned by one Stranahan. · He had erected the two houses thereon, and made the wall in question a party wall, between them. By two deeds, both dated and recorded at the same time, he conveyed the easterly lot to the grantor of the plaintiff, and the westerly lot to the grantor of the defendant, by a description which is claimed by the plaintiff to have so located the line of division as to throw the whole of the wall, and two inches of land on the westerly side thereof, within the boundaries of the plaintiff's lot. Assuming that the plaintiff is right in his construction of the description, yet the wall being a party wall, and, at the time of the conveyance serving as a support for the beams of the house erected on the lot now of the defendant, the premises now owned by the plaintiff were charged with the servitude of having the beams of that house supported by the wall in question, and of having the wall stand and serve as an exterior wall for the defendant's house, so long, at least, as the build-

ings should endure.    This servitude was both continuous and apparent, being one which would be discovered on an inspection of the premises by one reasonably familiar with the subject.    (*Butterworth* v. *Crawford*, 46 N. Y. 349.)    A mere measurement of the house would have disclosed it.    Consequently, on the severance of the two properties, the grantee of the westerly lot acquired an easement corresponding with the servitude to which the easterly lot was subject.    (*Lampman* v. *Milks*, 21 N. Y. 505, 509, 513; *Kilgour* v. *Ashcom*, 5 Harr. & Johns. 82.)    The right to use the wall as a party wall necessarily carried with it the right to occupy the space of two inches intervening between the wall and the easterly boundary of the defendant's lot with the timbers which were to find support in the wall, and to have the building and wall remain as they were at the time of the conveyance from Stranahan, at least so long as the building and wall should endure."

The case of *Spero* v. *Shultz* (14 App. Div. 423; affirmed in this court in 160 N. Y. 660), cited by the court below as fully supporting the plaintiff's contention that the title tendered him by the defendant was not good and marketable, is distinguishable from the case at bar in a most important particular.    In the statement of facts in that case it appears that the parties were ready to carry out the contract, but the court below sustained the objection made by the defendant, that the building agreed to be conveyed to him had no wall on its westerly side, and is exclusively supported by beams and girders inserted in the wall of the building on the premises next adjoining on the east, and is dependent entirely on that wall for support.    The learned Appellate Division, in view of this state of facts, said : " It must be assumed that in a contract for the purchase of a house, the defendant had a right to demand a house with four walls, the ordinary and generally accepted meaning of the term house necessarily including a structure with four walls.    *  *  *    Undoubtedly if it had been shown that the houses were originally owned by one person and had been built together, then, upon the authorities referred to, *  *  *  the presumption that the

wall was a party wall would arise. When, however, it does not appear but that they had different owners and were built at different times, the mere fact that a person has inserted the beams of his house in his neighbor's wall, unless it is shown to have been done by permission or under an agreement, or has been acquiesced in in such a way as to give a prescriptive right, does not thereby make it a party wall." It was under this state of facts that the Appellate Division agreed with the trial court that the evidence supported the finding that the plaintiff's building had no wall on its westerly side.

In the case before us, we have these buildings erected by a common owner, and the plaintiff's beam rights secure to him beyond all question during the existence of the party wall. The fact that a portion of that wall stands wholly upon the lot adjacent has no effect upon the legal rights of the parties. The title tendered to the plaintiff by the defendant was good and marketable, and to hold otherwise would be not only contrary to authority but calculated to unsettle a very large number of titles in the city of New York.

The judgments of the Trial Term and Appellate Division should be reversed, and new trial granted, costs to abide event.

PARKER, Ch. J., O'BRIEN, VANN, LANDON and CULLEN, JJ., concur; MARTIN, J., dissents.

Judgments reversed, etc.