(60 Misc. Rep. 163.)

## LAWSON v. MURDEN.

(Supreme Court, Trial Term, Westchester County.   June, 1908.)

1. BOUNDARIES — DESCRIPTION — RELATIVE IMPORTANCE OF CONFLICTING ELE-
MENTS.

A deed described the premises as a lot and the east half of a dwelling-
house bounded as follows:  Beginning at a designated road at the south-
west corner of a certain person's lot; thence northerly, along the west line
of such person's lot, 125 feet, to a stone wall; thence westerly, on the wall,
29 feet, to other lands of grantors; thence southerly, through the center
of a dwelling house, parallel with the first-mentioned line, 125 feet, to the
road; thence easterly, along the road, 29 feet, to the place of beginning—
being a lot 29 feet front and rear and 125 feet in depth, together with the
east half of the dwelling house situate thereon; the west half belonging to
grantors.   *Held*, that the rule that, in general, fixed monuments prevail
over courses, distances, and quantities, did not apply, so as to entitle the
center of the dwelling house to prevail over that part of the description
which declared that such westerly line was parallel with the easterly line;
but that the expression "parallel with the first-mentioned line" was, in
view of the exact dimensions given and the exact fixing of the corner
points, to be regarded as prevailing over the expression that a portion of
the westerly line ran through the center of the dwelling house.

2. EASEMENTS—TERMINATION.

An easement in adjoining premises, so far as might be necessary to
maintain a house, would not survive the removal of such house.

3. SAME—ESTOPPEL—GROUNDS OF.

A complaint in an action by an adjoining owner for an injunction al-
leged that she owned "to the middle of such timbers," meaning the studding
in a partition which divided a double frame house standing on both lots
into practically two houses, and that defendant owner was removing his
part of the house; such complaint being drawn on the theory that the
center line of the studding constituted the true dividing line between
the two lots.   The action resulted in a settlement whereby she released
to defendant all her rights in two closets which had been in the old parti-
tion, and part on one side of the center of the studding and part on the
other, and in which it was recited that defendant was constructing a brick
building on his lot, and it was for the mutual advantage that two chim-
neys, "one-half on the premises of each of such parties should be utilized,"
and in which it was agreed that defendant should flash her roof with tin
flashing into his wall, such flashing to remain so long as she owned the
property.   *Held*, that the settlement amounted to an acquiescence in a
continuance of the old easement in favor of the new building, and estopped
any question as to the correctness of the location of its wall.

4. SAME.

An agreement, in settlement of a suit between adjoining lot owners, re-
citing that one of them was constructing a brick building on his lot, and
that it was for the mutual advantage that the two chimneys then standing
"one-half on the premises of each of such parties should be utilized," and
providing that such owner should carry up at his own expense the whole
of such chimneys "to such height above his new building as he may deem
advisable," contemplated the preservation and use of the chimneys as
an appurtenance to the new building, so as to preclude any right in the
other owner to do any act on her side of the line which would impair their
use in connection with the building or to destroy the chimneys.

Action by William Lawson against Jessie A. Murden.  Finding for
plaintiff in part, but against him in all other respects.

James Dempsey, for plaintiff.
Strang, Sawyer & Taylor, for defendant.

MILLS, J.　The plaintiff and defendant are the owners of adjoining lots on the north side of South street in the village of Peekskill; the plaintiff's premises being the easterly parcel, and the defendant's the westerly.　This action is brought by the plaintiff to restrain the defendant from continuing the erection of a building upon her premises, so as to encroach upon the plaintiff's premises.

There is no dispute as to the facts.　On and prior to the 10th of April, 1850, the two lots, constituting a parcel of land fronting for nearly 60 feet on the north side of South street, then known as the "Post Road," were united in ownership in two persons.　In April, 1850, they conveyed away the easterly lot, which through several intermediate conveyances became the property of the plaintiff; the deed to him being dated May 12, 1905.　At the time of the conveyance in 1850 there was erected upon the parcel a double frame dwelling house fronting upon South street and being divided into practically two houses by a lath and plaster partition wall, the studding of which was four inches in width.　Each house or half of the entire house was used as a separate and distinct house; there being no direct connection by door or otherwise between the two.　It is obvious that the owner supposed the partition to be upon the dividing line of the two lots. The deed, made in April, 1850, of the easterly lot, contained the following description:

"All that certain lot and east half of a dwelling house, situate in the village of Peekskill aforesaid, bounded as follows, viz.:　Beginning at the Post Road, at the southwest corner of Mrs. Ann Mitchell's land; thence northerly, along the west line of the aforesaid Mrs. Ann Mitchell's lot, 125 feet, to a stone wall; thence westerly, on said wall, 29 feet, to other lands of the parties of the first part; thence southerly, through the center of a dwelling house, parallel with the first-mentioned line, 125 feet to the Post Road; thence easterly, along said Post Road, 29 feet, to the place of beginning—being a lot 29 feet front and rear and 125 feet in depth, together with the east half of the house situate on the above-mentioned premises; the west half of the same belonging to the parties of the first part."

No question has at any time arisen as to the easterly bound of the parcel conveyed by this deed and therein referred to as the "west line of the aforesaid Mrs. Ann Mitchell's lot."　The original owners or their executors subsequently, in or about 1887, conveyed the balance of said entire parcel to the defendant by the following description:

"Beginning on the north side of said street, at the southwest corner of a lot now of Mary Depew, formerly of Nancy and Elizabeth Depew; thence northerly, with the westerly line of said lot of Mary Depew, and through the center line of the frame dwelling house, in a course north 16 deg. 30 min. west, about two hundred and twenty-one (221) feet, to McGregory brook; thence, following said brook westerly, about twenty-seven (27) feet three (3) inches, to the northeast corner of a lot heretofore conveyed to Edwin B. Lent; then with the east line of said lot of Edwin B. Lent, in a course south 16 deg. 22 min. east, about two hundred and seventeen (217) feet, to the north side of said street; thence easterly, with the north line of said street as fenced, twenty-nine (29) feet and six (6) inches, to the place of beginning."

In 1905, the plaintiff, after having purchased his premises, the easterly parcel, undertook to tear down the easterly half of the frame dwelling house and to replace the same with a brick structure.　He proceeded upon the theory that the true dividing line between his par-

cel and the defendant's parcel was a line drawn from the point in his rear line 29 feet along the old stone wall from the former Mitchell lot to the middle of the partition of the frame house on the northerly side or end thereof, thence running southerly directly through the middle of the studding of such partition to the southerly end or side of the house, and thence to the north side of the street at a point 29 feet distant along that side of the street from the Mitchell lot. Such dividing line so located lies, except at· each end thereof, entirely west of a straight line drawn parallel with the westerly line of the Mitchell lot and 29 feet distant therefrom; such westerly variance from such parallel line reaching a distance or width of 13 inches at the rear of the building now being constructed by the defendant.

The plaintiff, acting upon his theory of. the true dividing line, in 1905 proceeded to erect his wall directly adjoining the east side of the studding of the old partition in the frame house, tearing down and removing all of the house lying east of such studding. After he had proceeded some way in constructing his building, which was to be three stories in height for a considerable depth, and then with an extension of one story to the rear, the defendant in this action instituted in this court, as plaintiff, an action against the plaintiff herein to obtain an injunction against him. A verified complaint in that action, being put in evidence by the plaintiff in this action, alleged that she, the defendant herein, owned "to the middle of such timbers," meaning the studding in said partition, and that the plaintiff herein by his operations was removing the. easterly part of the house, and thereby leaving her part of it uninhabitable; i. e., "impossible to heat it or keep the rain from pouring in." It is perfectly clear that that complaint was drawn upon the theory and in the belief on the part of the pleader, the present defendant, that the center line of the studding constituted the true dividing line of the two parcels; and such complaint contains no intimation of any claim on the part of the defendant here to the contrary.

Such action resulted in a settlement by a written stipulation or agreement. The part, or duplicate of it, signed by the defendant in this action, is in evidence here. In such agreement the defendant here releases to the plaintiff herein all her right and easement in the parts of two of the closets which had been in the old partition, and part on one side of the center of the studding and part on the other. It recites in its second paragraph that the plaintiff herein is constructing a brick building on his lot, and that it is for the mutual advantage of both parties that the two .chimneys, now standing "one-half on the premises of each of such parties, should be utilized." Such chimneys stood, one half on one side of the center of said studding, and the other half on the other side, and were adapted to be used, and were used, one-half by each house. The agreement provided that the plaintiff herein should carry up, at his own expense, the whole of such chimneys "to such height above his new building as he may deem advisable." It also provided that the plaintiff herein should "flash the roof of plaintiff (meaning the defendant herein) with tin flashing into his (meaning the plaintiff herein) west wall, that such flashing may remain

there so long as said Murden owns her present property." The plaintiff herein shortly thereafter completed his building.

In the spring of the present year the defendant herein tore down the remaining part of the old frame house, the westerly side, and undertook the construction upon her parcel of a three-story brick building to extend some five feet further north than the rear of the plaintiff's three-story structure. In so doing she proceeded to construct her easterly wall close up to the plaintiff's westerly wall, and in the rear to extend her such wall over the plaintiff's westerly wall at its one-story extension. She also undertook to remove portions of the lower parts of the chimneys, so as to open into the flues upon the easterly or plaintiff's side thereof. Thereupon the plaintiff began this action, and obtained a temporary injunction upon stipulation to proceed at once to trial. By such stipulation the trial was had at the Trial Term, but before the court without a jury. The various counsel have prepared and submitted briefs, which, with the evidence and maps showing the surveys, have been carefully considered.

At the taking of the testimony it seemed to the court that the recital in the description in the original deed, made in 1850, of the plaintiff's parcel, of the center of the dwelling house as being a part of the westerly line or bound of the premises conveyed, would prevail over the part of the description which declared that such westerly line or bound was parallel with the easterly line, being the bound first given as the westerly line of the Mitchell lot, upon the elementary rule that in general in a deed fixed monuments prevail over courses, distances, and quantities. A careful examination, however, of the authorities submitted by the counsel in their briefs, has convinced me that the description contained in that deed does not bring the case within that rule, but that it falls within the principle declared by the cases of Ehrenreich v. Froment (First Dept.) 73 App. Div. 213, 76 N. Y. Supp. 861, Schaefer v. Blumenthal, 51 App. Div. 517, 64 N. Y. Supp. 687 (reversed by the Court of Appeals upon another point, but practically affirmed upon this point, 169. N. Y. 221, 62 N. E. 175), and Smyth v. McCool, 22 Hun, 595, as explained and limited by Muhlker v. Ruppert, 124 N. Y. 627, at page 629, 26 N. E. 313. According to the doctrine of those cases in the description here under consideration the expression "parallel with the first-mentioned line" is, in view of the exact dimensions given and the exact fixing of the corner points, to be regarded as paramount and prevailing over the expression to the effect that a portion of the westerly bound ran through the center of the dwelling house.

It is not to be concluded that the parties to that deed intended that the dividing line should be a bulging-out, or irregular, or zigzag line, instead of a straight one, but rather that in their supposition that the straight parallel line would run through the center line of the house they were mutually mistaken. Evidently an exact survey was needed to reveal the true situation. No doubt the deed made in 1850 of the plaintiff's parcel, in view of the situation of the double frame house, carried with it, not only the fee of the land east of the parallel line, but also an easement upon the premises west of the line, so far as might be necessary to maintain the easterly house as it then was; but

such easement would not survive the removal of such house by the plaintiff. The defendant has not undertaken by any of her structures to pass over the dividing line, if it is to be thus parallel. Did the case rest here upon the various deeds alone, coupled with the general fact of possession thereunder of the respective houses, the court would consider the defendant entitled to judgment both upon her denials and upon her counterclaim; but the case before the court contains also evidence as to the former action and the settlement thereof as hereinbefore recited.

It seems to me that those facts respecting the former action and such settlement must be held to amount to an acquiescence by the defendant herein in a practical continuance of the old easement by the plaintiff herein in favor of his new building, and that the defendant herein, by such settlement and agreement, stands, at least as to the present building of the plaintiff herein, estopped from questioning the correctness of its location, or rather the location of its westerly wall. While the agreement is not, perhaps, explicit upon this point, it seems to me that by fair and necessary implication it involves this conclusion. This view of the matter, however, does not render the defendant's work in constructing, already accomplished or contemplated, unlawful, because she has the right to make any and every use of the premises up to—i. e., west of—the true dividing line, except such use as the plaintiff may have made of them with her consent. She, however, had no right to attempt to destroy the chimneys, or to do anything with them upon her side of the line which would impair the plaintiff's use of them in connection with his building. The agreement certainly and clearly contemplated the preservation and use of the chimneys as an appurtenance to the plaintiff's building. The court, therefore, finds that the plaintiff's case is established as to the chimneys, but that it fails in all other respects.

Decision is for the plaintiff in respect to the chimneys, but without costs. Each party may submit a proposed decision.