LAFAYETTE FORWARDING COMPANY, INC., Appellant, *v.* ROTHBART GARAGE OPERATORS, INC., Respondent.

First Department, June 1, 1923.

Party walls — owner leased building to plaintiff absolutely and without reservation concerning party wall — subsequently same owner leased adjoining building to defendant to be demolished and garage erected — roof and floor beams in defendant's building rested in wall of plaintiff's building — defendant made new holes in plaintiff's wall to support roof of garage and window openings were closed — defendant failed to prove that wall was party wall — plaintiff did not consent expressly or by implication to use of wall — no implication in leases that wall was party wall.

The owner of a building leased the same to the plaintiff absolutely and without reservation concerning the use of the wall as a party wall. Subsequently the same owner leased the adjoining building to the defendant under an agreement which provided that the defendant would demolish the building and erect on the site thereof a garage. The roof and floor beams of the building leased to the defendant rested in openings in the side wall of plaintiff's building. In constructing the garage the defendant made new openings in the side wall of plaintiff's building to support the roof of the garage, closed up the window openings in the wall and appropriated to itself a rectangular portion of plaintiff's yard.

*Held,* that the defendant did not prove that the said wall of plaintiff's building is a party wall and that the defendant has a right to insert therein the beams of any building it may erect on its premises, nor was it shown that the plaintiff, either expressly or by implication consented to the use of its wall to support the roof of defendant's garage.

The leases to the plaintiff and defendant do not in any way imply that the wall between the two buildings is a party wall.

APPEAL by the plaintiff, Lafayette Forwarding Company, Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 18th day of November, 1922, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the complaint upon the merits.

*Christian S. Lorentzen,* for the appellant.

*Menken Brothers* [*Mortimer M. Menken* of counsel], for the respondent.

DOWLING, J.:

Amalgamated Warehouses, Inc., was the owner of premises known as 100–112 Horatio street and 99–111 Jane street, 171 feet on Horatio street and 161 feet on Jane street, 70 feet west of Washington street. All the lots had buildings on them, which communicated with each other and, prior to the time the property was acquired by Amalgamated Warehouses, Inc., had been used as a paint factory.

A portion of the premises in question had erected on it two substantial six-story brick buildings; the rest was covered with houses of various heights.

In the latter part of 1920, Amalgamated Warehouses, Inc., opened negotiations with plaintiff to lease at a net rental, the two six-story buildings for twenty-one years, and to keep the same in repair, and with the defendant to lease the balance of the property, demolish the buildings and erect thereon, on or before July 1, 1921, a one-story garage covering the entire premises at a cost of not less than $50,000.

On November 11, 1920, Amalgamated Warehouses, Inc., leased the two six-story buildings Nos. 110 and 112 Horatio street, and 111 Jane street to plaintiff, describing them by street and number, the lease to run for twenty-one years from November 1, 1920, and plaintiff took immediate possession. On November 19, 1920, the remaining and adjoining property was leased to defendant, described by metes and bounds, the lease to run for twenty-one years from January 1, 1921. Immediate possession was given of all the buildings except 107–109 Jane street, for the purpose of demolition.

40

**626**  LAFAYETTE F. CO., INC., *v.* ROTHBART G. OPERATORS, INC.

First Department, June, 1923.                    [Vol. 205

Possession of 107–109 Jane street was not given till December 15, 1920.

The demise to plaintiff is absolute and without reservation for twenty-one years and makes the buildings, as they were at. the time, the plaintiff's for that term. The owner could not thereafter give the defendant any right in or to the plaintiff's buildings by lease or otherwise.

The four buildings bordering on the easterly and westerly lines of the premises demised to defendant all had side walls supporting the roof, except Nos. 107–109 Jane street, which had no westerly wall. The roof beams and the second-story floor beams were inserted in the wall of No. 111 Jane street, one of the buildings demised to plaintiff.

Defendant in compliance with the terms of its lease proceeded to demolish all the buildings on its demised premises and in January, 1921, demolished Nos. 107–109 Jane street with the rest and withdrew the roof beams and floor beams from plaintiff's building and plugged up the holes.

After this was done, defendant entered on plaintiff's premises and committed the wrongful acts complained of which consisted in cutting fifty-three new holes in the wall of plaintiff's building and inserting therein new beams supporting the roof of a new building, much larger, of an entirely different character and for a purpose in no way connected in its use with plaintiff's building; extending plaintiff's wall on plaintiff's premises to furnish support for the roof of the defendant's building and appropriating to itself a rectangular portion of plaintiff's yard and closing up the window openings in the wall, all which is deemed to constitute a continuing trespass and entitles plaintiff to relief in equity.

The defense is that the wall of plaintiff's building is a party wall and that defendant has the right to insert therein the beams of any building it may erect on the adjoining premises. Defendant also claims that the owner consented to this by approving the plans simultaneously with the execution of the lease. This contention was disposed of when it was shown that the plans did not show that plaintiff's wall and an extension thereof were to be used to support the roof of the garage. The plans filed with the building department did not show either that plaintiff's building was to be used for support. The indication on the plans was " use present foundation wall." This would necessarily refer to a wall on defendant's own premises and not to one on its neighbor's land.

Upon the record herein there is no proof that the wall in question was ever intended to be used as a party wall. The fact is that

the original owner, who had the right to use it in any manner it wished, never sought to create any party wall rights by its leases. It first made an absolute lease of the three buildings to plaintiff, with no reservations or limitations of any kind, and then leased the balance of the plot to defendant. It is true that the then physical situation was not sought to be altered by plaintiff, but that amounted at most to allowing the beams of defendant's building to remain in the wall on sufferance. Nor do I think that the testimony warrants the finding that plaintiff stood by and suffered the work complained of to be done by defendant. There is no positive proof to that effect nor any from which such an inference might properly be drawn.

Defendant claims that the leases to plaintiff and defendant imply that the wall between the two parcels was a party wall. There is no such implication. The prior lease to plaintiff with no reservations whatever, destroys any implication that a party wall agreement was created by the later lease to defendant, which contains no reference to a party wall.

In *Spero* v. *Shultz* (14 App. Div. 423; affd., 160 N. Y. 660) plaintiff brought an action to compel a purchaser to take title to a piece of property. The defense was unmarketability of title. The fact was that the beams of the house sold rested in a wall standing entirely on the adjoining property which was claimed in its entirety by the owner thereof. The plaintiff was able to show only that the two buildings had been in the same condition for thirty years, but was not able to show by what right the beams came to be inserted. The court held that plaintiff had not shown that the wall was a party wall, and dismissed the complaint; and that judgment was affirmed by the Court of Appeals, which held that the burden was on the plaintiff to show title to the use of the wall as a party wall. Such title defendant in the present case has utterly failed to show. The situation is that defendant rented a building without a westerly wall. The wall which supported the beams was not on defendant's land and did not belong to it. Those beams may have been inserted wrongfully in the first place, or under an agreement for a limited period of time, or the privilege may have been granted as a favor. No attempt was made to show how long the buildings had been in that condition or under what circumstances they came to be in that condition. There is no proof in the record on which the court can make a finding that the easterly wall of 111 Jane street was a party wall, and the findings to that effect are erroneous and must be reversed.

It was stated upon the argument, and conceded by both sides, that the building erected upon defendant's premises has been

destroyed by fire since the trial of the action, so that even a finding that the wall had been used as a party wall by sufferance, while both walls remained in their original condition, would be of no avail to defendant. But we find that no party wall ever in fact existed as between these parties, and that plaintiff had never waived its right to protest against the trespass committed on its property.

The judgment appealed from should be reversed and judgment directed for the plaintiff, but without costs on appeal or for the trial.

CLARKE, P. J., SMITH, FINCH and McAVOY, JJ., concur.

Judgment reversed and judgment directed for plaintiff, without costs on appeal or for the trial. Settle order on notice.