(2 App. Div. 483.)

## WILHELM v. FEDERGREEN.

(Supreme Court, Appellate Division, First Department.    March 20, 1896.)

1. VENDOR AND PURCHASER—MARKETABLE TITLE.
    A vendee was justified in refusing to accept a conveyance of a lot and building under a contract to convey with warranty, on the ground that a marketable title was not offered, where the building encroached at one point on the adjoining lot two inches, and, though 25 years had elapsed, the vendor admitted that he could not perfect his title by adverse possession,

because the lot had been owned part of the time by minors.   Barrett and O'Brien, JJ., dissenting.

2. SAME—TITLE BY ADVERSE POSSESSION—BURDEN ON VENDOR.
    Where a vendor contracts to convey, with warranty, land to which he claims title by adverse possession, the burden is on him to prove, not only possession for the required time, but that such possession ripened into title.

3. SAME—REPAIRS BY VENDEE IN POSSESSION.
    A vendor contracted to convey with warranty, and the vendee, by agreement, took possession and commenced repairs prior to the date for conveyance.  Subsequently, discovering that the vendor's title was bad, he stopped, but was induced to continue them by the promise of the vendor to pay for them if he failed to make a good title.  *Held*, that the vendor was liable for the repairs.

Appeal from trial term, New York county.

Action by Henry Wilhelm against Nathan Federgreen.  From a judgment for plaintiff, and an order denying a new trial, defendant appeals.  Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN and INGRAHAM, JJ.

E. Kaufman, for appellant.
C. Blandy, for respondent.

VAN BRUNT, P. J.   The plaintiff sues as assignee of one Henry Holk, to recover damages for the failure on the part of the defendant to convey to said Holk a marketable title to premises, in the city of New York, contracted by the defendant to be sold to said Holk.   It appeared upon the trial of the action that the premises in question had a building upon them which encroached by some two inches upon the adjoining lot.   The vendee had gone into possession, and made certain repairs to the premises; and, upon the rejection of the title, the plaintiff brought this action to recover the deposit made under the contract and the value of the repairs, which it was claimed, in case the title was not perfect, the defendant had agreed to pay.

The facts disclosed upon the trial showed that on the 9th of May, 1891, the defendant and said Holk made a contract for the purchase and sale of the premises in question, which consisted of a lot of land on the south side of Forty-Eighth street, distant 300 feet easterly from the corner of Forty-Eighth street and Second avenue, being 25 feet front and rear, and 100 feet 5 inches in depth. This lot was improved.   The purchase price was to be $16,000, $500 to be paid down upon the execution of the contract, and the further sum of $3,000 on the 1st of August, 1891, when the deed was to be delivered, and the balance of the purchase money to be paid by the assumption of two mortgages, amounting to the sum of $12,500, then upon the premises.   The vendor covenanted to give a title free and clear from all incumbrances except the lien of the two mortgages above mentioned, and, in case of his failure so to do, he agreed to forfeit all money paid on the contract as liquidated damages;  the vendee to have possession of the premises on the 3d of August, 1891, subject to existing liens, and in the meantime

to have the privilege of repairing the premises if he did not molest tenants. On the 11th of May, 1891, a supplemental agreement was entered in, by which the vendee was permitted to take possession of the premises on that day, and was to pay the interest on the mortgages from that date, and all taxes, assessments, and repairs that might thereafter accrue or be made, and to have all the rents of the premises from that date until the execution and delivery of the deed. It appeared upon the part of the plaintiff that, after the contract and supplemental contract had been entered into, the vendee asked the defendant what would be the consequences if the defendant had not a clear title; and the defendant replied that there would be no danger about that, and, if there was anything wrong with the title, he would be fully responsible. Upon a survey being made of the premises, it appeared that one of the walls of the building upon the front of the lot encroached two inches upon the adjoining lot. Certain negotiations were had between the vendor and vendee in respect to this matter; and the vendee testified that, near the 1st of August or the last of July, he saw the defendant, who promised to have it straightened out in the course of a couple of weeks, and the vendee agreed to postpone the closing of the sale for a month. In the latter part of August, he saw the defendant again, who said he was going to see a surveyor; that he had not been able to see the owner of the property, as he had not come in town yet. The vendor said: "What will I do about the repairs? Will I stop them, or go ahead?" The defendant said: "No; go on, and, if it cannot be straightened out, I will be responsible." The vendee then continued making the repairs in question. On the 12th or 13th of September, the vendee saw the defendant again, and asked him if he had the encroachment business straightened out. The defendant said, "No," that the lot next to him was willed to little children, and he could not do anything with it. Each party was prepared to carry out the contract so far as he was able under these circumstances.

The court, at the trial, upon these facts appearing, charged the jury that the defendant could not give a legal title; and, the values of these repairs having been agreed upon, a verdict was directed for the amount of the deposit and certain of the repairs. A motion was made for a new trial, which was denied. From the judgment and order thereupon entered, this appeal is taken.

There is no question raised in respect to the encroachment in question. But it is urged that, as the building has been erected more than 20 years, there has been adverse possession established, which has ripened into a title. It is undoubtedly true, as claimed upon the part of the defendant, that, whenever possession of sufficient duration is proved, the title of the possessor is as good as if conveyed by a deed. Baker v. Oakwood, 123 N. Y. 16, 25 N. E. 312. It does not seem to be necessary to cite authorities in order to establish that proposition. But the questions of the nature of the adverse possession and the sufficiency of its duration are always questions which are open for investigation and consideration; and the purchaser will not be compelled to take title

where there are circumstances which may have prevented the possession from ripening into a title. Shriver v. Shriver, 86 N. Y. 576. In the case cited, it was held that a purchaser will not be compelled to complete the purchase where there is some reasonable ground shown in support of an objection to the title, or where the title depends upon a matter of fact which is not capable of satisfactory proof, or, if capable of that proof, yet is not so proved. In the case at bar, in order that this adverse possession should have ripened into a title, it was necessary to show that such possession was intended to be adverse, and, further, that the parties in whom the title to the premises claimed to be held adversely was vested were in such a condition that the statute of limitations ran, and the protection of the statute inured to the benefit of the adverse possessor. In the case at bar there was certainly no proof that the possession in question had ripened into a title, or that the statute had run, by showing that there were persons in being who could have asserted their rights, and who were bound so to do within the period of the occupation. On the contrary, it appeared affirmatively by the statement of the defendant that the reason he could not perfect his paper title was that the property had been willed to infants. It was clear, therefore, that the possession in question had not ripened into a title. °Parties are not required to complete a purchase where it appears that there is a reasonable objection to the title, and no clear and satisfactory proof that such objection is without foundation. Under the circumstances shown, it seems to us that the learned judge who tried the cause was right in holding that no such title as the purchaser was authorized to require was tendered to him in fulfillment of this contract.

It is urged upon the part of the appellant that the burden of proof was on the plaintiff to show that there were infants who had a better title to the property than the defendant, and that this the plaintiff absolutely failed to do. But it seems to us that, in this view of the case, the duties of the defendant were entirely misapprehended. He was claiming a title because of special circumstances, and he was therefore called upon to show that those special circumstances gave him a title; and it was not incumbent on the vendee to prove the negative. Even if such were the fact, however, enough was shown by the admissions of the defendant to require the ruling above named to have been made.

As to the claim for repairs, there was sufficient evidence to warrant the jury in finding an agreement upon the part of the defendant to pay for these repairs in case of a failure of title. It is true that the agreement of the 11th of May contemplated the vendor's entry into possession of the premises as owner, and the making of repairs. But, when this question in regard to the title came up, the defendant induced the vendee to go on with the repairs, under the promise to pay for them if the title failed. The title having failed, he is bound to comply with his contract.

The judgment and order should be affirmed, with costs.

INGRAHAM and RUMSEY, JJ., concur.

BARRETT, J. (dissenting). This is a case of the practical location of, and long acquiescence in, a boundary line. Even admitting the 2-inch encroachment, it does not parallel the entire length of the defendant's lot. It commences with 2 inches, and lessens as the middle of the lot is approached. The line of the wall runs obliquely to the rear of the lot, until the encroachment entirely disappears, and finally the defendant's wall is well within the survey line. The neighbor encroached upon has taken advantage of this deviation to build $1\frac{1}{2}$ inches on the defendant's land in the rear of the premises, so that the encroachments are mutual. The doctrine of adverse possession need not be resorted to under such a state of facts. Here is a building which has been standing for over 25 years just as it stands to-day. The owner may have lost the $1\frac{1}{2}$ inches in the rear by his neighbor's adverse possession, and he may, by the application of the same rule, have gained the diminishing strip of from 2 inches to nothing in front. This may or may not be, according to the circumstances. But the question of title is settled by the rule with regard to the practical location of boundary lines. If there ever was a proper case for its application, it is one like the present, where a trivial deviation or deflection in the wall of a city building has lasted without objection for over 25 years.

It was held in Baldwin v. Brown, 16 N. Y. 359, that practical location and long acquiescence in a boundary line are conclusive, not upon the notion that they are evidence of a parol agreement establishing the line, but because they are themselves proof that the location is correct and of so controlling a nature as to preclude evidence to the contrary. Selden, J., speaking for the court of appeals, there said:

"The acquiescence in such cases affords ground not merely for an inference of fact to go to the jury as evidence of an original parol agreement, but for a direct legal inference as to the true boundary line. It is held to be proof of so conclusive a nature that the party is precluded from offering any evidence to the contrary. Unless the acquiescence has continued for a sufficient length of time to become thus conclusive, it is of no importance. The rule seems to have been adopted as a rule of repose, with a view to the quieting of titles."

The learned judge added that, if necessary to establish such a line, "the law will presume a conveyance in accordance with it." The practical location there was held to be decisive of the case, "without regard to the question whether the plaintiff's claim was barred under the statute concerning adverse possession."

This case was followed, and the language of Selden, J., quoted with approval, in Reed v. Farr, 35 N. Y. 113. The headnote correctly condenses the decision, as follows:

"Practical location of a boundary line, and acquiescence therein for more than twenty years, is conclusive of the location of the boundary line. Such location and acquiescence is deemed conclusive on the ground that it is evidence of the correct location of so high a nature as admits of no contradiction."

It is a rule, as was said by Miller, J., in Sherman v. Kane, 86 N. Y. 73, which "applies not only to cases of disputed boundary, but to those about which there can be no real question."

Thus, the rule concludes the surveyor. But, even if it did not, the surveyor's evidence here is far from satisfactory even as to the encroachment upon the frontage. He seems to have been employed to help the plaintiff's assignor to break his contract. He was asked this question, and gave this answer:

"Q. Wasn't this a bulge in the wall, so that from the front the wall extended out two inches, and the bulge didn't extend back? A. I went there to look for technicalities, and I think I found it."

At first he said he did not make the survey. That was made by his former partner, who was dead. He merely measured the frontage of the house, where he found the "technicality" of what may have been a 2-inch encroachment, or a 2-inch bulge. He reported accordingly, and his employer promptly rejected the title. This surveyor acknowledged, however, that the line showed that whoever occupied the house adjoining the rear of the defendant's lot built over on that lot 1½ inches. Thus, the parties on both sides of the line acquiesced in the practical location of the defendant's wall. To condemn a title upon such facts would be a serious inroad upon the rule of repose, and would limit the practical location doctrine to the strict conditions attaching to adverse possession. The former doctrine is quite as important to the quieting of city titles as it is with regard to farm lands. It has been applied in the country where the practical location has been fixed by a hedge fence or a row of trees. It may well be applied with equal liberality where the boundary was originally fixed by the solid wall of a four-story house.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, J., concurs with BARRETT, J.