GUY T. BATTLE and Another, Plaintiffs, *v.* GUISEPPE CALAVITTA
and Another, Defendants.

Supreme Court, Chautauqua County, May 7, 1928.

**Vendor and purchaser — land contract — action to recover purchase
price paid for sale of land which defendants represented as extending to
cement wall running parallel to tracks of Erie railroad — evidence shows
railroad has record title to strip of land fourteen feet in width lying
within line of wall — house on premises projects over lands claimed
by railroad — ignorance of falsity of statements constitutes no defense
in action to rescind and recover purchase price — allegation of fraud
and deceit not fatal to action — title cannot be determined as market-
able until rights of railroad are determined — plaintiffs entitled to
rescind transaction and recover back purchase price — form of judgment
stated.**

This is an action to recover the purchase price paid by the plaintiffs under a con-
tract for the sale of land which the defendants represented, prior to plaintiffs'
acceptance of the deed, as extending to a cement wall running parallel to the
tracks of the Erie railroad, which property adjoins defendants'. While the deed
describes the property as extending to the bounds of another railroad, the evidence
shows that the Erie railroad has record title to a strip of land fourteen feet in
width lying within the line of the wall, so that a house erected and standing on
the premises to be conveyed by the defendants projects over the lands, the record
title to which is in the Erie railroad. It is conceded that the representations
stated in the complaint were made, but defendants in refusing to accept a recon-
veyance or to pay back the purchase price claim they were made in good faith,
in the belief that their title extended to the wall and that, in any event, their
title was good by reason of adverse possession.

Although untrue, the statements made, inducing the purchase, were made in good
faith and without knowledge of their falsity, but ignorance of the falsity of state-
ments constitutes no defense in an action to rescind and recover back the purchase
price paid for real estate.

The fact that plaintiffs have alleged fraud and deceit is not fatal to the action,
where the proof establishes misrepresentation and the statements made were
material and influenced the bargain.

Since the title to which plaintiffs were entitled becomes marketable only when the
claims of the railroad company have been determined in defendants' favor by
some appropriate action, and since those rights cannot be determined in this
action because the railroad company is not before the court, plaintiffs had the
right to rescind the transaction and recover back the purchase price paid.

Moreover, it is doubtful whether defendants have established adverse possession;
it is not for the plaintiffs to disprove adverse possession, but the burden rests
upon the defendants to prove it.

An interlocutory judgment should be entered declaring the sale and transfer made,
rescinded, because of misrepresentation, and an accounting should be had to
ascertain what amount, if any, should be credited by reduction of plaintiffs'
claim. The deed tendered back by plaintiffs to the defendant Guiseppe Cala-
vitta should be deposited with the clerk of the court to be held in escrow and
delivered to said defendant upon proof of payment of the judgment. If the

said judgment is not paid in full the plaintiffs should have an equitable lien on the premises for the balance unpaid, with the right to enforce collection by sale.

ACTION to recover the purchase price paid under a contract for the sale of land.

*Eleazer Green,* for the plaintiffs.

*Frank H. Mott,* for the defendants.

CHARLES B. WHEELER, Official Referee.  On October 12, 1925, the plaintiffs entered into a land contract with the defendant Guiseppe Calavitta by which Calavitta agreed to sell and the plaintiffs to buy certain premises in the city of Jamestown, N. Y., on which stood a frame dwelling.  By deed dated November 2, 1925, the defendants conveyed to the plaintiffs the property described.  The description in the deed to the plaintiffs reads as follows:

"All that tract or parcel of land, situate in the City of Jamestown, County of Chautauqua and State of New York, bounded and described as follows: Beginning at a stake in the southerly bounds of Chandler Street at the northeasterly corner of land of J. C. Breed; thence southerly along the easterly line of said Breed's land to the northwesterly bounds of the Buffalo and Jamestown Railroad, thence northeasterly along the bounds of said Railroad to Chandler Street, thence westerly along the southerly bounds of Chandler Street to the place of beginning.

" This conveyance is given and accepted subject to a mortgage of $1500.00 now on said premises, which the parties of the second part hereby assume and agree to pay and discharge as part of the consideration for this conveyance."

It will be noted that no distances are stated in the deed, but the description runs to the " northwesterly bounds of the Buffalo and Jamestown Railroad, thence northeasterly along the bounds of said Railroad to Chandler Street," etc.

This description appears to be one used in the prior conveyances through which the defendant claims title.

In the course of the negotiations leading up to the making of the contract and the delivery of the deed the plaintiff Battle asked the defendant Guiseppe Calavitta to point out to him where the boundary lines of his property ran, and the defendant pointed out to him a certain low cement wall running parallel to the Erie railroad tracks, whose property adjoined and lay next the defendants' property.  Relying on this representation, the plaintiffs accepted the deed in question and paid the purchase price.

4

Supreme Court, May, 1928. [Vol. 132

The evidence, however, discloses the Erie Railroad Company has record title to a strip of land about fourteen feet in width lying within the line of this cement wall over and onto the land claimed to be owned by the defendants and undertaken to be conveyed by them to the plaintiffs. In other words, the house erected and standing on the premises undertaken to be conveyed by the defendants projects over and onto the lands the record title to which is in the Erie Railroad Company. Upon the discovery of these facts the plaintiffs rescinded the contract between themselves and the defendants, tendered to the defendants a deed reconveying the premises, and demanded a return of the purchase price paid. The defendants refused to accept the reconveyance or to pay back the purchase price. Thereupon the plaintiffs began this action setting up the facts and seeking to recover the price paid. It is conceded the representations stated were made, but the defendants contend they were made in good faith in the belief their title extended to the wall as stated, and that in any event the defendants' title was good by reason of prescriptive right or adverse possession, and that the Erie Railroad Company was in no position to assert any title to the land within the wall, and on which the building or dwelling stood.

Assuming for the argument that although untrue the statements made inducing the purchase were made in good faith and without knowledge of their falsity, nevertheless in an action of this kind to rescind the action may be maintained, and ignorance of the falsity of statements constitutes no defense. (*Bloomquist* v. *Farson*, 88 Misc. 615; 222 N. Y. 375.)

As was said in that case, an action may be maintained in equity to rescind a transaction which has been consummated through misrepresentation of material facts not amounting to fraud. Unlike an action at law for damages, intentional misstatements need not be proved. (222 N. Y. 380, and cases cited.) The fact that the plaintiffs have alleged fraud and deceit is not fatal to the action provided the proof establishes misrepresentation and that they are material and influenced the bargain. (*Bloomquist* v. *Farson*, 88 Misc. 615; 222 N. Y. 375.)

The defendants, however, insist that they acquired and have good title to the disputed strip by reason of adverse possession of the same for over twenty years, and on this trial of this action gave evidence tending to establish this contention. The referee is not prepared to hold that in an action between the defendants and the Erie Railroad Company the defendants might not establish title by adverse possession. However, the Erie Railroad Company is not a party to this litigation and any finding or judgment this

referee might make would in no way bind or be conclusive on the railroad company, and the railroad company would still be in the position to assert any and all rights it has to the disputed strip. Consequently the referee takes it to be that the main question to be decided is whether the defendants in law and in fact conveyed to the plaintiffs a marketable title to the property purchased, for the plaintiffs were entitled to a marketable title. The referee is of the opinion a marketable title was not given.

The evidence shows that the Erie Railroad Company does in fact claim title to the strip in question, for on April 19, 1924, the railroad company made a written lease of at least a portion of this strip to Mrs. Calavitta in and by which Mrs. Calavitta agreed to pay the railroad company one dollar a year as rental for the property leased. This lease was properly recorded. This lease was doubtless obtained from Mrs. Calavitta for the purpose of obtaining a formal recognition of the title of the railroad company. It is to be noted that Mr. Calavitta and not Mrs. Calavitta was the grantee of and owner of the property. Mr. Calavitta testified on the trial he knew nothing of this lease to his wife until several months after the sale and conveyance to the plaintiffs. On the other hand, Michael Lombardo, an attorney and counselor of this court, the notary public before whom the lease in question was acknowledged by Mrs. Calavitta, testified her husband accompanied his wife and was present at the time the paper was acknowledged before him. In view of this conflict in the testimony the referee accepts the testimony given by Mr. Lombardo as stating the facts. Mr. and Mrs Calavitta are interested witnesses. Mr. Lombardo apparently is wholly disinterested. Moreover, it is very difficult to believe that in a transaction like the making of a lease of the character of this the husband and wife should not have conferred with one another, and the husband have fully understood what was being done. Anyway the lease makes it fully appear the railroad was asserting title to the strip in dispute and was not conceding title in the defendants and a deed from the defendants to the plaintiffs cast the burden on the plaintiffs of defending the title to the fourteen-foot strip. There is the further question presented whether the description used in the contract and deed to the plaintiffs will be construed to carry the fourteen-foot strip claimed to have been acquired by adverse possession. As stated, this description is one apparently used in the deeds from prior owners. As originally employed it undoubtedly only conveyed to the railroad land as described in the deed to that company. Assuming later the defendants or their prior grantors had acquired title by adverse possession to the disputed strip, would a deed using the prior description be

deemed to include the disputed strip, or would it be construed to convey only so much land as was embraced in the original grant from the common owner who first conveyed to the railroad company, and later conveyed the adjoining parcel? The referee has been unable to find decisions on the question raised.

It is, however, sufficient to say that in the referee's opinion the title conveyed to the plaintiffs in view of the facts stated cannot be deemed a marketable title. We do not think an experienced conveyancer would pass title as marketable.

The plaintiffs were entitled to get a marketable title. It becomes marketable only when the claims of the railroad company have been judicially determined in favor of the defendants by some appropriate action. Those rights cannot be determined in this action because the railroad company is not before the court.

The rule is well settled as stated in *Cerf* v. *Diener* (210 N. Y. 156, 161) that "A purchaser of real estate * * * is entitled to a marketable title and * * * will not be compelled to take property the possession of which he may be obliged to defend by litigation, or to receive a title that is subject to probable claims by another, so that it will not be reasonably free from any doubt which would interfere with its market value. In another form the general rule is stated that where a defect in the record title can only be supplied by resort to parol evidence and title may depend on questions of fact, the purchaser will not be required to perform his contract and that he may reject a title which an ordinarily prudent person would be justified in hesitating to accept or loan money on." (Citing *Ferry* v. *Sampson,* 112 N. Y. 415; *Wanser* v. *De Nyse,* 188 id. 378.)

The facts here present just such a case and the plaintiffs would have been fully justified in rejecting the title to the property and unquestionably would have done so had they known the description in the deed did not carry to the cement wall, and the record title was absolutely defective.

If the decision of this case depended entirely on the question of adverse possession it is very doubtful whether the defendants have established it within the rules governing such cases. The case as presented by the evidence we are of the opinion hardly measures up to the requirements. It is not for the plaintiffs to disprove adverse possession, but the burden rests on the defendants. (*Miner* v. *Hilton,* 15 App. Div. 55, 59.)

In that case Mr. Justice BRADLEY stated that the mere fact that an encroachment had existed for twenty years or upwards is not sufficient evidence that the adjacent owner was concluded from asserting title to land on which the building encroached. The posses-

sion of land is presumed to be held subordinately to the true title until such presumption is repelled by evidence that it has been held under claim of title adversely or in hostility to the true owner who may claim title to it. (Citing *Doherty* v. *Matsell,* 119 N. Y. 646; *Hartley* v. *James,* 50 id. 38; *Wilhelm* v. *Federgreen,* 2 App. Div. 483.)

The referee reaches the conclusion the plaintiffs had the right to rescind the transaction and to recover back the purchase price paid.

It remains to provide the form the judgment should take. We think this should be treated as an action in equity to rescind and to recover the purchase price. It appears the plaintiffs have been in possession of the property since the deed to them was given. If they have received rentals in excess of the carrying charges of the property, such amount should be credited by way of reduction of the judgment. There is no evidence, however, before the court showing the income from or expenditures of the property.

The referee, therefore, directs an interlocutory judgment be entered declaring the sale and transfer made rescinded on account of misrepresentation inducing the same, and that an accounting be had to ascertain what amount, if any, should be credited by reduction of the plaintiffs' claim. Upon the ascertainment of said amount the plaintiffs will be entitled to judgment against the defendant Guiseppe Calavitta for the amount paid, with interest, less the net income received from said property.

The deed tendered back by the plaintiffs to the defendant Guiseppe Calavitta should be deposited with the clerk of this court to be held by him in escrow and delivered to said defendant upon proof that the amount of said judgment has been paid and upon the order of this court and not before. If the full amount of said judgment should not be paid, or collected on execution, the judgment should provide that the plaintiffs shall have an equitable lien on said premises for the amount so remaining unpaid, and shall have the right to enforce the collection of the same by a sale of said property in the manner prescribed by law in the case of fore-closure of mortgages on real property.

To that end the plaintiffs may apply at the foot of the judgment to be entered herein for the relief in such case herein provided. Let findings be prepared and judgment entered in conformity with these views, with costs of this action.

So ordered.